IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| RONNIE WATKINS § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:08-CV-243-Y |
| § | |
| TEXAS CES, INC. d/b/a FELDERHOFF § | |
| BROTHERS DRILLING § | |

ORDER DENYING MOTION FOR SUMMARY JUDGMENT

Pending before the Court is Defendant's Motion for Summary Judgment (doc. # 20), filed June 19, 2009. For the following reasons, the Court DENIES the motion.

I. BACKGROUND

Plaintiff Ronnie Watkins is a black male. Beginning in January 2006 and continuing into May 2006, Watkins was employed by Patterson Drilling. On May 17, Watkins was injured on the job, and his doctor restricted him to light-duty tasks only. Patterson fired Watkins shortly thereafter for failing a drug test.[1] On June 16, defendant Texas CES, Inc., hired Watkins as a derrick hand for one of its on-shore oil rigs.[2] Watkins was the only black employee on that rig. (Pl.'s App. 10.) Watkins was not limited by a doctor to light-duty restriction when Texas CES hired him. (Def.'s App. 19.) During the majority of Watkins's employment, one of his supervisors was Roger Bidwell, a toolpusher.

On November 27, over five months after being hired by Texas CES, Watkins gave Bidwell a note from his doctor again imposing a light-duty restriction that became necessary after Watkins began experiencing worsening pain from his May 2006 injury at Patterson.

---

[1] Watkins stated that he failed the drug test because he took a painkiller after the injury. (Def.'s App. 14.)

[2] The chain of command on an oil rig is capped by toolpushers, who supervise drillers, who supervise derrickhands, floorhands, and motormen. (Def.'s App. 46.)

(Def.'s App. 20, 49-51.) Watkins told Bidwell that the restriction was a result of Watkins's prior injury at Patterson. (Def.'s App. 49.) After contacting Texas CES's safety coordinator and the human-resources department, Bidwell was told to fire Watkins unless Watkins could get a full release to work without restrictions. (Def.'s App. 49-51.) Watkins's doctor refused to lift the restriction, and, on November 27, 2006, Texas CES fired Watkins. (Def.'s App. 22; Pl.'s App. 69.)

On April 10, 2008, Watkins filed suit against Texas CES, alleging that he was unlawfully fired on the basis of his race. *See* 42 U.S.C. § 1981 (West 2003). Watkins further averred that he was subjected to a hostile work environment during his five-month employment at Texas CES. Regarding this claim, Watkins stated that in October 2006, he arrived at work to find a hangman's noose hanging from a railing and that "Mike,"[3] a floor hand, pushed him toward the noose and said, "Come on my nigger; let me put you in the noose." (Am. Compl. 3; Pl.'s App. 11.) Watkins claims he was frightened. (Pl.'s App. 11.) Watkins's supervising driller, Phillip Chambers, allegedly witnessed and participated in this incident. (Am. Compl. 3; Resp. 1; Pl.'s App. 12, 28.) Watkins explains that he did not complain about this incident, believing it was unnecessary because his supervisor, Chambers, was present. (Def.'s App. 29.)

Watkins also points to common and repeated usage of "nigger" by other employees in reference to blacks in general and to him.[4] (Pl.'s App. 13.) He says racist jokes were often told

---

[3] Texas CES has provided proof that no "Mike" worked on the rig in October 2006, which Watkins does not dispute. A "Mike Gilliland" worked with Watkins in August 2006. (Pl.'s App. 46-47.) Watkins asserts that the "Mike" in his complaint is Gilliland and that August 2006 is "clearly close in time to October." (Resp. 7 n.5.) Texas CES asserts that this discrepancy shows that Watkins's allegations are so nonspecific as to constitute incompetent summary-judgment proof. This Court agrees with Watkins that his allegation is sufficiently specific as to time.

[4] Apparently, this racial slur was used as part of the drilling-floor slang to refer also to white employees. (Def.'s App. 54.)

in Watkins's presence by Chambers, Gilliland, Bidwell, and Jeff Melkoski, a motorman. (Def.'s App. 32, 35.) Watkins claims that Gilliland called Watkins "my nigger" daily. (Pl.'s App. 13.) Watkins contends he complained to Chambers and Bidwell about the racist comments, but nothing was done other than Chambers's telling Gilliland to stop using the slur in reference to Watkins. (Am. Compl. 3; Pl.'s App. 12-13.) Bidwell stated that Watkins never complained to him. (Def.'s App. 27, 31-32.) Further, Jordan Castro, a floorman, apparently would call Watkins "my nigga," and Watkins would refer to Castro likewise. (Def.'s App. 48.) David Beaty, a toolpusher who sometimes supervised Watkins, once allegedly stated that "if the nigger doesn't show up, I will run his black ass off" and that "if the nigger doesn't bring a doctor's note for being late, I will fire his ass." (Am. Compl. 3.) Watkins later stated that he did not personally hear Beaty's comments, but they were reported to him by Castro and a motorman. (Def.'s App. 33-34.) Bidwell admitted to using the slur in reference to Watkins, but he also used the term to refer to whites and Hispanics on the rig. (Pl.'s App. 33.)

In its motion for summary judgment, Texas CES asserts that it is entitled to judgment as a matter of law on Watkins's race-discrimination claim because Watkins has failed to state a prima-facie case. Texas CES also claims it is entitled to summary judgment on Watkins's hostile-work-environment claim because Watkins has failed to show that (1) he was subjected to unwelcome harassment, (2) he was subjected to harassment that affected a term, condition, or privilege of his employment, and (3) Texas CES knew or should have known of any alleged harassment. Finally, Texas CES asserts that it has established beyond doubt all elements of an affirmative defense because Watkins did not follow proper, established corporate procedures to complain of the alleged harassment.

3

## II.  DISCUSSION

### A.  SUMMARY-JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The party moving for summary judgment has the initial burden of demonstrating that it is entitled to a summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party need not produce evidence showing the absence of an issue of fact with respect to an issue on which the nonmovant bears the burden of proof, however.  Rather, the moving party need only point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmovant's claim.  *See id.* at 323-25.

When the moving party has carried its summary-judgment burden, the nonmovant must go beyond the pleadings and by his own affidavits or by the depositions, answers to interrogatories, or admissions on file set forth specific facts showing that there is a genuine issue for trial.  *See* FED. R. CIV. P. 56(e).  This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions or by only a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

In evaluating the propriety of a defendant's motion for summary judgment based on an affirmative defense, the Court must draw all reasonable inferences in favor of the nonmoving party.  *Anderson*, 477 U.S. at 255; *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).  Because the defendant bears the burden of proof on an affirmative defense, the defendant

must establish beyond doubt all of the essential elements of the defense to be entitled to summary judgment. *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

In making its determination on the motion, the Court must look at the full record in the case. *See* FED. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

## B.  UNLAWFUL FIRING BASED ON RACE

Under Title 42, United States Code, § 1981, it is unlawful for an employer to discriminate against an employee on the basis of that employee's race. *See* 42 U.S.C. § 1981(a).[5] Discrimination claims based upon circumstantial evidence, such as this one, are evaluated under a burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995) (applying *McDonnell-Douglas* framework to discharge case). First, the plaintiff must establish a prima-facie case of discrimination. *See Haynes v. Pennzoil Co.*, 207 F.3d 296, 300 (5th Cir. 2002). If the plaintiff establishes a prima-facie case, then a presumption of discrimination arises and the burden shifts to the defendant to articulate--but not prove--a legitimate nondiscriminatory reason

---

[5]The elements of a § 1981 claim are identical to those for a claim under Title VII. *See Pratt v. City of Houston*, 247 F.3d 601, 606 n.1 (5th Cir. 2001). Thus, cases interpreting Title VII are instructive in analyzing a § 1981 case. *See Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).

for the adverse employment action.[6] *See McDonnell Douglas Corp.*, 411 U.S. at 802; *Evans v. City of Houston*, 246 F.3d 344, 350 (5th Cir. 2001). If the defendant meets its burden of production, then the presumption of intentional discrimination is rebutted and the burden of production shifts back to the plaintiff to show that the reason proffered by the defendant is merely a pretext[7] for racial discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Evans*, 246 F.3d at 350.[8]

Thus, the first issue is whether Watkins has presented a prima-facie case of racial discrimination. To that end, Watkins must prove that he: (1) is a member of a protected class; (2) was qualified for his position; (3) was subject to an adverse employment action; and (4) was replaced with someone outside of his protected class or that others similarly situated were treated more favorably. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001). Texas CES argues that Watkins has failed to produce sufficient evidence of his qualification for the job and disparate treatment (numbers two and four, above). (Mot. for Summ. J. 6-9.)

Initially, Texas CES contends that Watkins cannot demonstrate, prima facie, a case for racial discrimination--and thus summary judgment is appropriate--because Watkins cannot

---

[6]"It is important to note . . . that although the *McDonnell Douglas* presumption shifts the burden of *production* to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

[7]A plaintiff may show pretext "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256-57.

[8]As the Supreme Court acknowledged, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false" may be sufficient for the finder of fact to infer discrimination. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 148 (2000). The Supreme Court has also made it clear, however, that "instances [exist] where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.*

demonstrate that he was qualified for the position. Citing *McClaren v. Morrison Management Specialists, Inc.*, 420 F.3d 457 (5th Cir. 2005), Texas CES contends that Watkins should be judicially estopped from showing that he was qualified for the position "since his statements to the [Social Security Administration ("SSA")] are entirely inconsistent with that proposition." (Def.'s Br. 8.) In *McClaren*, the Fifth Circuit Court of Appeals concluded that a plaintiff claiming age and disability discrimination was judicially estopped from attempting to demonstrate that he was qualified for the position in his discrimination case. There, when applying for social security disability benefits, plaintiff had previously provided statements affirming that he was totally disabled and unable to perform his past relevant work as of a date preceding his termination, and the plaintiff failed to provide an adequate explanation for the inconsistency. Texas CES points the Court to no evidence, however, demonstrating that Watkins previously made inconsistent representations to the SSA. And, although Watkins apparently agrees that he originally mistakenly asserted to the SSA that he was disabled as of May 17, 2006, he contends that he later amended his SSA filing "to indicate the correct date that [he] was unable to work: April 19, 2007." (Pl.'s App. at 88.) Furthermore, the SSA awarded benefits from the latter date. *See In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004) (noting three requirements for judicial estoppel: "(1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent"). Thus, judicial estoppel does not provide a basis for concluding that Watkins was not qualified for the position.

To satisfy the disparate-treatment prong of his prima-facie case, Watkins must show that Texas CES gave preferential treatment to employees outside his protected class under "nearly identical circumstances." *See Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991). The

7

requirement of "nearly identical" proof is an exacting one and does not equate to merely similar circumstances. It is not satisfied when allegedly comparable employees hold different jobs, have different supervisors, are subjected to adverse employment actions for dissimilar violations, or have their employment status determined by different people. *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009).

Watkins names Jeff Melkoski as a similarly-situated employee who was treated more favorably by Texas CES:

> Melkoski, a [white] derrick hand employed by [Texas CES] at the rig on which Watkins worked, was also placed on light-duty restrictions. . . . Melkoski and Watkins both performed the same duties as derrick hands. However, once on light duty, Melkoski was treated more favorably than Watkins. . . . Specifically, while Watkins was permitted to perform the "lighter" duties of a derrick hand, including mixing mud, painting, scrubbing, and watching the pits, [Texas CES] also required him to continue to perform the more physical duties of a derrick hand, including climbing into the derrick and lifting heavy items. . . . By way of contrast, while he was on light duty, Melkoski was not required to perform the more physical duties of a derrick hand. . . . [Texas CES] further mandated that Watkins have his light-duty restrictions removed in order to continue working for it, while [Texas CES] did not mandate that Melkoski have his light-duty restrictions lifted, nor did [Texas CES] terminate Melkoski for not having his light-duty restrictions lifted.

(Pl.'s Resp. 13.) After careful review of Watkins's declaration, the Court concludes that it is sufficient, though barely so, to create a question of fact on this issue. Watkins avers that Melkoski was placed on a light-duty restriction and, as a result, was permitted to "perform his duties on the rig as opposed to in the derrick." (Pl.'s App. 87.) Watkins wholly fails to demonstrate, however, any basis for his knowledge that Melkoski was officially placed on "light duty," and Texas CES's records contradict that assertion. Nevertheless, Watkins also testifies that Melkoski was treated differently from him in that "he was not required to perform the more physical duties of a derrick hand, such as climbing into the derrick." (*Id.*) It appears from

8

Watkins's averments that he personally observed that Melkoski's workload was less than his after injury.[9] Thus, giving Watkins every benefit of the doubt, and in light of the fact that the Court has concluded that a trial must be had on the hostile-work-environment claim for reasons explained *infra*, the Court errs to caution and concludes that Watkins has adequately presented a prima-facie case of disparate treatment. And, although Texas CES has asserted a legitimate, nondiscriminatory reason for the discharge, the Court concludes that Watkins's prima-facie case coupled with his evidence regarding the noose incident and of the use of racial epithets on the rig, including by his supervisors, constitutes sufficient evidence to avoid summary judgment on the issue of pretext.

### C. HOSTILE WORK ENVIRONMENT

#### 1. Prima-Facie Case

To establish a hostile work environment, Watkins alleges that: (1) Chambers and Gilliland tried to place a noose around his neck with other employees present, (2) other employees[10] would refer to Watkins with a racial slur, and (3) racist jokes were told on the rig.[11] Watkins refers to other instances of racially-based harassment that were fleshed out during discovery. (Compare Resp. 7-8 with Am. Compl. 3-4.) These instances include (1) Gilliland's referring to Watkins as a "bitch" to Watkins's wife, (2) Bidwell's and floorman Shawn Wilson's

---

[9]Texas CES also contends that Melkoski was ultimately terminated. That termination apparently resulted, however, from Melkoski's failure to bring in a doctor's note excusing his absence when he took a girlfriend to the doctor. (Def.'s App. 111.) Obviously, Melkoski was ultimately terminated for different reasons than was Watkins.

[10]In his amended complaint, Watkins generally states that "other employees" used the racial slur in reference to Watkins and specifically alleges that Gilliland and Melkoski used the racial slur as well.

[11]Watkins stated that he did not verbally object to the jokes and would just walk away when they were told. (Def.'s App. 32-33.)

repeatedly referring to Watkins as a "nigger," (3) an employee's referring to himself as a "skinhead" to Watkins. (Pl.'s App. 13.)

The parties agree that for Watkins to establish a prima-facie claim for hostile work environment due to racial harassment, he must prove that: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his race; (4) the harassment affected a term, condition, or privilege of employment; and (5) Texas CES knew or should have known about the harassment and failed to take prompt, remedial action. *See Long v. Eastfield College*, 88 F.3d 300, 309 (5th Cir. 1996). Watkins need only satisfy the first four elements if he alleges that he was harassed by supervisors with immediate or successively higher authority over him. *See Celestine v. Petroles de Venezuella SA*, 266 F.3d 343, 353-54 (5th Cir. 2001). Texas CES does not dispute that Watkins meets the first and third elements.

### a. Unwelcome

The first question is whether a reasonable jury could find that the allegedly harassing speech and actions were unwelcome. Whether speech or conduct was unwelcome presents a difficult question of proof that turns on credibility determinations. *See Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 476 (7th Cir. 2004). Texas CES asserts that the alleged statements and actions were not unwelcome because Watkins listened to the jokes, used the racial slur himself to refer to Castro, and failed to complain to the human-resources department. However, Watkins alleges that he complained to Chambers and Bidwell about the repeated use of the slur. Bidwell asserts that Watkins never complained to him, but this merely raises a fact issue regarding any complaint to Bidwell. There is no evidence contradicting Watkins's complaining to Chambers about the comments. Further, the fact that Watkins participated in

10

using the racial slur does not bar his hostile-work-environment claim if he shows that at some point he clearly stated that such conduct would, in the future, be considered unwelcome and the conduct continued thereafter. *See generally Erps v. W. Va. Human Rights Comm'n*, 680 S.E.2d 371, 380-83 (W. Va. 2009) (compiling federal cases explaining "unwelcome" element and noting plaintiff's participation not always bar to hostile-work-environment claim). As stated above, Watkins avers that he complained of the racial slurs to Bidwell and Chambers, his supervisors. (Pl.'s App. 12-13.) He did not complain of the noose incident because Chambers was present and because "he was afraid that they might go through with it." (Pl.'s App. 12.) After his complaints, the verbal abuse continued. (Def.'s App. 30-31.) This evidence is sufficient to raise a fact issue regarding whether the harassment was unwelcome.

b. Affected term, condition, or privilege of employment

There must also be evidence that the alleged harassment affected a term, condition, or privilege of Watkins's employment. To satisfy this prong, Watkins must show that the harassment was severe or pervasive. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-82 (1998). Whether conduct is hostile depends on the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007); *Walker v. SBC Servs., Inc.*, 375 F. Supp. 2d 524, 541 (N.D. Tex. 2005). "Simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges" that can survive summary judgment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir.

2004). Watkins must objectively show that a reasonable person would find the Texas CES environment hostile or abusive. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993).

Texas CES asserts that Watkins's allegations show nothing "more than coarse, rowdy behavior." (Mot. for Summ. J. 13.) Texas CES relies heavily on *Vaughn v. Pool Offshore Co.*, 683 F.2d 922 (5th Cir. 1982), to argue that the environment at Texas CES was typical for oil rigs and that it was normal for all employees to use racial epithets. *Vaughn* is distinguishable. Dennis Vaughn, a black employee at an off-shore oil rig, joined in using racial epithets to refer to other employees, and the slurs were used by all without animus. *See id.* at 924. Further, the plaintiff's own perception that the acts directed at him were not racially motivated and that he was not singled out for abuse because of his race informed the conclusion that there was no hostile work environment.[12] *See id.* at 924-25. Here, there is some evidence of animus in the use of the epithets and during the alleged noose incident. (Pl.'s App. 11, 13.) Further, Watkins, as the only black employee, says he felt singled out and scared by the general environment at Texas CES. (Pl.'s App. 12-14, 16.) This evidence of daily racial animus at Texas CES, especially in light of Watkins's allegation regarding the noose,[13] is sufficient to raise a fact question regarding whether the harassment was severe or pervasive. *See, e.g., EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 400-01 (5th Cir. 2007); *Walker v. Thompson*, 214 F.3d 615, 619-22 (5th Cir. 2000); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 182 (4th Cir. 2001); *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1266 (7th Cir. 1991).

---

[12]This Court additionally notes that *Vaughn* was decided in 1982. The Court hopes that more than twenty-five years after *Vaughn*, this type of incendiary and patently offensive language cannot be viewed as "routine" or as mere "rowdiness" in any type of work environment.

[13]Texas CES makes much of the fact that there is no corroborating evidence that the noose incident occurred. (Mot. for Summ. J. 11-12, 15.) However, this Court is required to review the evidence in the light most favorable to Watkins, who clearly states that it did occur.

c. Employer knew or should have known

Finally, there generally must be evidence that Texas CES knew or should have known about the harassment and failed to take prompt, remedial action. As stated above, proof regarding this element is unnecessary if the plaintiff alleges that he was harassed by supervisors with immediate or successively higher authority over him. Watkins avers that Chambers participated in the noose incident and that Bidwell repeatedly referred to him with the racial epithet. This would appear to be a sufficient basis upon which to impose liability upon Texas CES. *See Faragher*, 524 U.S. at 807. ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.")

2. Affirmative Defense

Texas CES asserts that it is entitled to an affirmative defense in bar to Watkins's hostile-work-environment claim. Specifically, Texas CES raises the eponymous *Ellerth/Faragher* defense, which provides that a plaintiff cannot prevail on a hostile-work-environment claim if the employer shows, by a preponderance of the evidence, that (1) it promptly exercised reasonable care to prevent and correct any racially harassing behavior and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. *See Faragher*, 524 U.S. at 807-08; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). In support of its argument, Texas CES points to its anti-harassment policy that

13

Watkins admitted to receiving and signing in June 2006.[14] (Def.'s App. 31.) The policy delineated what steps an employee should take when faced with "any job-related harassment":

> [P]romptly report the incident to your supervisor who will see that the matter is investigated and appropriate corrective action taken. If you believe it would be inappropriate to discuss the matter with your supervisor or such a discussion would make you feel uncomfortable, report it to [Texas CES's] Human Resources representative or your division Manager so that the incident can be investigated and corrective action taken. In conjunction with reporting the incident of harassment, you should fill out a "Harassment Incident Form" and give the completed form to the person to whom you reported the harassment (*i.e.*, your supervisor, Human Resources or your manager).

(Def.'s App. 81.)

This Court cannot say, viewing the evidence in a light favorable to Watkins, that Texas CES has established that it promptly exercised reasonable care to prevent and correct any racially harassing behavior. There is no evidence that Texas CES reviewed the anti-harassment policy with its employees and supervisors either when hired or after the racially-charged incidents observed by Chambers and Bidwell. But there is evidence that the racially-charged atmosphere discouraged Watkins from complaining about the noose incident, which was witnessed by Chambers, and that Watkins was afraid of physical retaliation if he did complain. And Watkins says he complained numerous times to supervisors Chambers and Bidwell about the repeated use of racial slurs. Chambers told Gilliland to stop, but the offensive language allegedly continued from multiple employees. Thus, Texas CES has failed to meet its burden of demonstrating that no genuine issue of material fact exists as to the applicability of the *Ellerth/Faragher* affirmative defense. *See, e.g., Walker v. SBC Servs., Inc.*, 375 F. Supp. 2d 524,

---

[14]Texas CES seems to claim that the mere presence of a sexual-harassment policy discharges the requirement that it promptly exercise reasonable care to prevent and correct any racially harassing behavior. (Reply 3.) But cases that rely on the presence of an employer policy to satisfy the first prong of the *Ellerth/Faraghar* defense also explain that further training on the policy was given to employees. *See, e.g., Lauderdale v. Tex. Dep't of Crim. Justice, Institutional Div.*, 512 F.3d 157, 164 (5th Cir. 2007). There is no evidence that training regarding harassment policies and prohibitions was given.

543 (N.D. Tex. 2005). Even if this Court were to conclude that Texas CES had met its burden regarding the first *Ellerth/Faragher* prong, there are fact issues regarding whether Watkins's reasons for failing fully to avail himself of the policy's procedures to complain about the harassment were unreasonable.

### D. DAMAGES

Texas CES asserts that Watkins is not entitled to back pay, front pay, or punitive damages. *See Whiting v. Jackson State Univ.*, 616 F.2d 116, 122 n.4 (5th Cir. 1980) (stating back pay, front pay, and punitive damages are recoverable in discrimination action under § 1981). This Court concludes that Watkins may recover back pay from the time he was fired until the time he was determined to be disabled under the Social Security Act: between November 27, 2006, and April 17, 2007.[15] *Cf. Stephenson v. Nokia, Inc.*, No. 3:06-CV-2204-B, 2008 WL 2669492, at *8 n.8 (N.D. Tex. May 1, 2008) (excluding period of disability under the Social Security Act from computation of back-pay award). Further, any front pay award must be assessed in light of Watkins's disability status at the time of trial. (Resp. 17.) Finally, Watkins's punitive-damages request involves unresolved fact issues regarding Texas CES's alleged malice and reckless disregard.

### III. CONCLUSION

This Court cannot grant judgment as a matter of law on Watkins's claim that he was unlawfully fired on the basis of his race or his hostile-work-environment claim because the evidence before the Court raises fact issues. Watkins is entitled to request back pay, and there

---

[15]As previously mentioned, the SSA determined Watkins was totally disabled as of April 17, 2007. Watkins initially represented that he was disabled as of May 17, 2006, before his employment with Texas CES. However, the administrative court determined that he was totally disabled as of April 17, 2007.

are fact issues precluding judgment as a matter of law on Watkins's claims for front pay and punitive damages. Summary judgment is therefore denied.

SIGNED October 26, 2009.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE